UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEONARD CONNER,

        Petitioner,

     -v-                         07-CV-6230(MAT)
                                     **DECISION AND ORDER**

THOMAS POOLE, Superintendent,

        Respondent.

## I.    Introduction

*Pro se* Petitioner Leonard Conner ("Petitioner") filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of two counts of Robbery in the First Degree (New York Penal Law ("Penal Law") § 160.15[4], [2]) and two counts of Burglary in the First Degree (Penal Law § 140.30[1], [4]) entered August 19, 2003, in Wayne County Court, following a bench trial before the Honorable John B. Nesbitt.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

On November 4, 2002, Petitioner, along with three other men, armed with shotguns, broke into an apartment in the Village of Sodus, Wayne County, threatened the occupants with their guns, and stole a purse containing approximately $800 in cash. Rolanda Jones ("Rolanda") and her cousin Lakeisha Jones ("Lakeisha") were in the apartment with two young children at the time. Rolanda called 911

immediately after the men left, describing the perpetrators and their getaway vehicle, a white Chevrolet Blazer. New York State Troopers Michael J. Page ("Page") and Scott Sheppard ("Sheppard") heard the 911 dispatch and, shortly thereafter, spotted a vehicle matching the description that had been broadcast. The officers followed the vehicle, which ultimately turned onto a side street and was abandoned. Trial Transcript [T.T.] 46-48, 64, 95-116.

The officers found the vehicle empty, with the doors open and the engine running. When Sheppard went to secure the vehicle, he found money strewn on the floorboard, a lady's handbag wedged between the rear seat and open door, and a shotgun in the back seat. Sheppard also found a backpack at the side of the road, approximately 500 feet from the vehicle, that contained two shotgun shells. T.T. 50-73. Shortly thereafter, officers encountered Petitioner sitting on the steps of a house about 100 yards away. His pants were wet and muddy. T.T. 81-94. When Petitioner was questioned by the officers regarding his whereabouts and why his pants were wet, he stated, among other things, that he did not know why his pants were wet and that he had been "cracking" at an acquaintance's house. He was thereafter taken into custody and arrested. Petitioner's clothes and papers were later found inside the vehicle. T.T. 61-82, 90-91.

After Petitioner's arrest, officers took him to Rolanda's apartment where, after Rolanda viewed Petitioner sitting in the back of the police car in handcuffs, she identified him as one of

the perpetrators ("the show-up"). Lakeisha also viewed Petitioner in the same show-up, but could not identify him as one of the perpetrators.[1] T.T. 24-28, 95-107.

On November 19, 2002, under Wayne County Indictment No. 02-118, a grand jury indicted Petitioner on two counts of robbery in the first degree and two counts of burglary in the first degree.

Prior to trial, a suppression hearing was held, wherein Petitioner sought to suppress any statements, physical evidence or identification evidence. See Suppression Hr'g. Transcript of 01/27/03 and 01/31/03. In a ruling from the bench, the court determined that Petitioner's initial seizure was based upon reasonable suspicion and that his arrest was based upon probable cause. The court suppressed the statements made by Petitioner after he was taken into custody, but before his Miranda warnings at the time of his arrest, but otherwise admitted statements made before and after that time frame. The court found that the seizure of Petitioner's property was constitutionally sound. The court also suppressed the show-up identification by Rolanda as unduly suggestive, but ruled her identification of Petitioner apart from the show-up would be admissible at trial insomuch as it was "confirmatory" in nature. See Decision of the Wayne County Court, Ind. No. 02-118, dated 03/25/03, Pages 3-8.

On June 2, 2003, Petitioner waived his right to a trial by

---

[1] Both women, however, were able to make in-court identifications of Petitioner at trial. T.T. 95-107.

jury, and, on June 16, 2003, a bench trial occurred before the
Honorable John B. Nesbitt. Petitioner testified in his own
defense.

On June 17, 2003, the court found Petitioner guilty of all
counts charged in the indictment. On August 19, 2003, he was
adjudicated a second felony offender and was sentenced to
concurrent, determinate terms of sixteen years imprisonment and
five years post-release supervision. Sentencing Minutes 11-12.

Shortly thereafter, Petitioner moved, pursuant to New York
Criminal Procedure Law ("CPL") § 440 to set aside his conviction.
See Petitioner's CPL § 440 motion (Respondent's Exhibit J, Pages
100-127). Pursuant to CPL § 440.10(2)(b), the trial court denied
Petitioner's motion. See Letter Decision from the Honorable John
B. Nesbitt, dated 11/12/03 (Respondent's Exhibit J, Page 130).
Petitioner appealed the trial court's denial, which was denied by
the Appellate Division, Fourth Department on April 5, 2004. See
Decision of the Appellate Division, Fourth Department, Ind. No. 02-
118, dated 04/05/04.

Petitioner then appealed his judgment of conviction to the
Appellate Division, Fourth Department, raising the following
issues: (1) the trial court erred when it failed to suppress
evidence seized after Petitioner's illegal arrest; (2)
improper/inadequate court identification; (3) the verdict was
against the weight of the evidence; and (4) harsh and severe
sentence. See Petitioner's Brief on Appeal, Points I-IV.

-4-

Petitioner also filed a *pro se* supplemental brief, raising several new claims and supplementing the claims raised in his appellate counsel's brief. <u>See</u> Petitioner's *Pro Se* Brief on Appeal, Pages 2-55. Petitioner's judgment of conviction was unanimously affirmed. <u>People v. Conner</u>, 15 A.D.3d 843 (4th Dept. 2005); <u>lv. denied</u>, 4 N.Y.3d 885 (2005).

On December 20, 2005, Petitioner filed a motion for a writ of error coram nobis with the Appellate Division, Fourth Department, alleging that he received ineffective assistance of appellate counsel. <u>See</u> Petitioner's Motion for a Writ of Error Coram Nobis, dated 12/20/05. The Appellate Division, Fourth Department summarily denied Petitioner's motion on April 28, 2006. <u>People v. Conner</u>, 28 A.D.3d 1256 (4th Dept. 2006). Petitioner appealed the denial, which was denied by the New York Court of Appeals on September 29, 2006. <u>People v. Conner</u>, 7 N.Y.3d 847 (2006).

On April 12, 2006, Petitioner filed a second CPL § 440 motion, wherein he challenged the propriety/adequacy of the show-up identification procedure and subsequent in-court identifications. <u>See</u> Petitioner's CPL § 440 motion, dated 04/12/06; Petitioner's Rebuttal, dated 05/26/06. The trial court denied Petitioner's motion on procedural grounds pursuant to § 440.10(2)(a) and (c). <u>See</u> Memorandum Decision of the Wayne County Court, Ind. No. 02-118, dated 06/28/06, Page 2. Petitioner appealed the denial to the Appellate Division, Fourth Department, which was denied on April

22, 2007.  See Decision of the Appellate Division, Fourth Department, Ind. No. 02-118, dated 04/22/07.

The instant habeas petition followed, wherein Petitioner seeks relief on the following grounds: (1) the trial court should have suppressed evidence seized after Petitioner's illegal arrest; (2) improper/inadequate identification; (3) deficiencies in the grand jury proceeding; (4) ineffective assistance of trial counsel; and (5) ineffective assistance of appellate counsel.  See Petition [Pet.] ¶A-D and Attachments [Attach.] (Dkt. #1); Traverse [Trav.] (Dkt. #15).

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court

decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a

State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

## B.   Exhaustion Requirement and Procedural Default

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.,</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.,</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir. 1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), <u>cert. denied</u>, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of

federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Jimenez v. Walker</u>, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." <u>Grey</u>, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977).

**C.   Adequate and Independent State Ground Doctrine**

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural

rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question ." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

**IV. Petitioner's Claims**

**1. Fourth Amendment Claim**

Petitioner contends that the trial court erred when it failed to suppress evidence seized after his allegedly illegal arrest. See Pet. ¶12A; Trav., Point One. Petitioner raised this claim on direct appeal, and it was rejected on the merits. The Appellate Division ruled that Petitioner's arrest was based on probable cause, and that his motion to suppress evidence gathered incident to the arrest was properly denied. Conner, 15 A.D.3d at 844.

In general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494, (1976) (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978) (emphasis added). A Federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process

but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. See CPL § 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in CPL § 710.10 et seq. as being facially adequate).

Here, Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with, and indeed took full advantage of, the opportunity to fully adjudicate this matter in state court. Petitioner asserted this claim at a lengthy pre-trial suppression hearing, and again raised it on direct appeal. The Appellate Division affirmed the trial court's determination, finding that Petitioner's arrest was based on probable cause, and that his motion to suppress evidence gathered incident to the arrest was properly denied.

Moreover, Petitioner has not demonstrated that an "unconscionable breakdown" occurred in the courts below. His dissatisfaction with the determination arrived at by the trial

court, and affirmed by the Appellate Division, does not constitute the sort of "breakdown" referred to in Gates v. Henderson. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), aff'd, 852 F.2d 59 (2d Cir. 1988) (per curiam); accord, Capellan, 975 F.2d at 70 (observing that some sort of "disruption or obstruction of a state proceeding" of an egregious nature, e.g., the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record. Even if the state court erroneously decided the issue, a petitioner cannot gain federal review of a Fourth Amendment claim simply because a Federal court may reach a different result. See Capellan, 975 F.2d at 71.

Thus, the Court is precluded from considering Petitioner's fully litigated Fourth Amendment claim on habeas review. The claim is dismissed.

### 2. Deficiencies in the Grand Jury Proceeding

Petitioner asserts two claims related to the grand jury proceedings that led to his indictment. Pet. ¶D, Attach. Ground 3; Trav., Point Four. First, he claims that the evidence before the grand jury was legally insufficient to support either the charges brought against him, or any lesser-included offenses. Second, he

claims that, in responding to Petitioner's pre-trial motion to dismiss the indictment, the trial court failed to "do a respectable inspection of the grand jury minutes" when it determined that there were no errors in the grand jury proceedings. These claims do not present issues that are cognizable by this Court on habeas review.

It is well-settled that the right to indictment by a grand jury is not applicable to the states. Alexander v. Lousiana, 405 U.S. 625, 633 (1972). Any rights before the grand jury are, therefore, not constitutional in nature, but a product of state law. See Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990). A federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, Petitioner's claims implicate matters of state law, and are not cognizable by this Court on habeas review.

Moreover, Petitioner's guilty verdict establishes both that there was probable cause to arrest him and that his guilt was established beyond a reasonable doubt. See Jansen v. Monroe County, 430 F. Supp. 2d 127, 128 (W.D.N.Y. May 5, 2006) (finding that guilty verdict at Petitioner's bench trial precludes habeas review of all of Petitioner's claims related to the grand jury proceeding) (citing United States v. Mechanik, 475 U.S. 66, 70 (1986)); accord Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) ("[i]f federal grand jury rights are not cognizable on direct

appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court."). Accordingly, because Petitioner was convicted after a bench trial in which the judge, as the trier of fact, found him guilty beyond a reasonable doubt, any errors related to the grand jury proceedings cannot serve as the basis for habeas relief. The claim is dismissed.

### 3.   Improper/Inadequate Identification

In grounds two and three of the petition and points two and three of the traverse, Petitioner makes various contentions related to the allegedly improper show-up procedure and Rolanda's and Lakeisha's subsequent in-court identifications. Pet. ¶22B, C; Trav., Points Two and Three. These claims were raised in Petitioner's second CPL § 440 motion, and rejected on state procedural grounds, pursuant to CPL § 440.10(2)(a) and (c).[2] By

_____

[2]    CPL § 440.10 provides, in relevant part, that "2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

(a) The ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue; or

. . .

(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]"

CPL § 440.10(2)(a), (c).

relying on CPL § 440.10(2)(a) and (c), the state court invoked a
state procedural rule which constitutes an adequate and independent
state ground for rejecting the claims. See Cruz v. Berbary, 456 F.
Supp. 2d 410 (W.D.N.Y. Oct. 16, 2006) (finding Petitioner's habeas
claims procedurally defaulted as trial court dismissed them on
state procedural ground, pursuant to CPL § 440.10(2)(a) & (c)).

Petitioner cannot again seek leave to appeal the claims in the
Court of Appeals because he has already made the one request for
leave to appeal to which he is entitled. See N.Y. Court Rules §
500.20. Collateral review of these claims is also barred because
the claims were either already raised on direct appeal and disposed
of the merits, or, could have been raised on direct appeal, but
unjustifiably were not. See CPL § 440.10(2)(a), (c).
Consequently, the claim is procedurally defaulted. See Coleman,
501 U.S. 722 at 750.

A finding of procedural default bars habeas review of the
federal claim unless Petitioner can show cause for the default and
prejudice attributable thereto, or demonstrate that failure to
consider the claim will result in a miscarriage of justice. Murray
v. Carrier, 477 U.S. 478, 492 (1986); Wainwright v. Sykes, 433
U.S. 72, 87-91 (1977). Petitioner makes no showing of the
requisite cause and prejudice, nor has he alleged "actual
innocence," such that this Court's failure to review the claim will
result in a miscarriage of justice. Thus, Petitioner is unable to

overcome the procedural default, and the claim is dismissed.

**4. Ineffective Assistance of Trial Counsel**

Petitioner alleges that he was deprived of his Sixth Amendment right to the effective assistance of counsel based on, *inter alia*, counsel's failure to object to the use of suppressed evidence throughout the trial, specifically the use of his statements to Trooper Sheppard and to Lakeisha's identification testimony. Pet., Attach. Ground 1; Trav., Point Five. Petitioner raised this claim on direct appeal, and it was rejected on the merits. Conner, 21 A.D.3d at 1395.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must

judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.   The Court finds that Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

Here, Petitioner contends that counsel failed to object to the use of suppressed evidence throughout the trial, and that such failure evinced a lack of trial strategy and a "basic understanding of trial rules." Trav., 26.  The Court rejects this contention.

At the outset, the Court notes that the alleged error Petitioner complains of –– a failure to object to testimonial evidence -- relates to a decision that generally falls within the ambit of trial strategy, and, if reasonably made, will not constitute a basis for an ineffective assistance of counsel claim. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). Petitioner has failed to show how counsel's failure to object was unreasonable, given the facts and circumstances of the case.

Regarding the use of his statements to police, Petitioner argues, rather unconvincingly, that the following three lines of testimony from Sheppard, about the condition of Petitioner's clothing immediately before he was ordered to the ground and taken into custody, was both violative of the court's suppression decision and also damaging to his case:

| | |
|---|---|
| Prosecutor: | Did he [Petitioner] answer you? |
| Sheppard: | Yes.  Just said I don't know. |
| Prosecutor: | His answer was he didn't know? |
| Sheppard: | Yes. |

Trav., 27;  T.T. 81.  Contrary to Petitioner's contention, however, this testimony was not violative of the court's suppression decision in that the statement was made before he was taken into custody (i.e., within the permissible time frame set forth in the suppression decision).  Moreover, Sheppard's testimony was not, in itself, prejudicial insomuch as Petitioner's statement did not exculpate him or inculpate him, and was simply a neutral response to Sheppard's inquiry as to why his pants were wet.  Thus, under these circumstances, there were no grounds for counsel to object, and the Court cannot find that counsel's failure to do so was unreasonable.

Similarly, the Court cannot find that counsel's decision not to object to Lakeisha's identification testimony was unreasonable.  Indeed, as Petitioner correctly points out, counsel did not object to Lakeisha's identification testimony on direct examination.  T.T. 95-98.  The record reflects that, on direct examination, Lakeisha recounted, with particularity, the events of November 4, 2002, as she remembered them.  She did not, however, make an in-court identification of Petitioner at that time.  Rather, her testimony established that she had a significant opportunity to view the perpetrators during the crime.  T.T. 90.  Given the precise way in

which Lakeisha was able to recount the events that occurred on the night of the crime, it was not unreasonable for counsel to withhold objection to Lakeisha's direct examination, and, instead, challenge Lakeisha's identification through pointed cross-examination, which counsel did with skill and precision. T.T. 98-103. On cross-examination, Lakeisha testified to the following: that when she first spoke with police, shortly after the commission of the crime, she could not identify any of the perpetrators; and that when she confronted Petitioner in a show-up, following his arrest, she could not identify him. T.T. 98-102. However, she also testified that she was unable to initially identify Petitioner because she was scared, but that, in court, she was able to identify him because she could "get a good look at him." T.T. 97-100. Given these circumstances (i.e., her inability to initially identify Petitioner), counsel's decision to elicit the in-court identification was a carefully executed, strategic maneuver. That is, had Lakeisha not been able to identify Petitioner in court, Petitioner's case would have been strengthened. Likewise, if Lakeisha was able to identify him in court -- which she was -- such an identification could be used by the defense to undermine her credibility. T.T. 98-100, 102. In this regard, counsel's decision to elicit the in-court identification cannot be considered unreasonable.

Furthermore, Petitioner cannot meet the prejudice prong of Strickland by showing that but for the alleged errors, the result

of the trial would likely have been different.  Petitioner offers
only a conclusory statement that had counsel objected to the use of
the "suppressed" evidence, as discussed above, the outcome of his
case would have been different.  Trav., 27.  The Court rejects this
assertion insomuch as the evidence against Petitioner, independent
of Sheppard's testimony and of Lakeisha's identification testimony,
was overwhelming.

Accordingly, the court cannot find that the state court's
determination of this issue was contrary to or an unreasonable
application of settled Supreme Court law.  The claim is dismissed.

### 5.    Ineffective Assistance of Appellate Counsel

Petitioner contends that he was deprived of his Sixth
Amendment right to the effective assistance of appellate counsel.
Pet., Attach. Ground 2; Trav., Point Six.  Petitioner raised this
claim in his coram nobis application, which was summarily denied by
the Appellate Division.  Summary denial of Petitioner's motion
constitutes an adjudication on the merits of this claim.  Sellen v.
Kuhlman, 261 F.3d at 303, 311-12 (2d Cir. 2001).

The Strickland standard of ineffective assistance of counsel
applies equally to trial and appellate counsel.  See Mayo v.
Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S.
820 (1994).  Additionally, when challenging the effectiveness of
appellate counsel, a petitioner must show that counsel "omitted
significant and obvious issues while pursuing issues that were

clearly and significantly weaker." <u>Clark v. Stinson</u>, 214 F.3d 315, 322 (2d Cir. 2000) (citing <u>Mayo</u>, 13 F.3d at 533). "Strategic choices," such as deciding which issues to raise on appeal, "made after thorough investigation of the law and facts . . . are virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690-91. "[T]he decision of appellate counsel to raise a claim on appeal that may reasonably be considered stronger than those asserted by the petitioner in a habeas petition is usually a well-reasoned tactical decision [and] does not constitute ineffective assistance of counsel." <u>Wood v. Artuz</u>, 39 F. Supp. 2d 211, 216 (E.D.N.Y. 1999) (citing <u>Jones</u>, 463 U.S. at 751-52; <u>Cantone v. Superintendent, N.Y. Correctional Facility at Green Haven</u>, 759 F.2d 207, 218-19 (2d Cir.1985)).

Here, Petitioner has failed to substantiate a claim of ineffective assistance of appellate counsel. Petitioner's claim is overly broad, and does not set forth how or in what manner appellate counsel's performance was constitutionally deficient. By way of conclusory assertion, he contends that appellate counsel was ineffective "by failing to argue any key issues" and for submitting a "boilerplate" appellate brief that lacked "meritorious and non-frivolous issues." Trav., 29, 31. However, the Court is unable to discern what, if any, "key issues" Petitioner alleges counsel failed to raise on direct appeal. Rather, it appears, based on the argument set forth at "Point Six" of his Traverse, he simply faults

counsel for not including the issues that he raised in his *pro se* supplemental brief. Trav., 36. This claim fails for two reasons. First, counsel is not required to raise all colorable claims on appeal. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983). Counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." <u>Id.</u> at 751-53. The record reflects that appellate counsel did just that. He submitted a thorough, well-researched brief in which he persuasively argued four issues, two of which Petitioner adopted in his habeas petition. Second, the record reflects that the Appellate Division, Fourth Department did, in fact, consider all of the claims raised in the brief submitted by counsel, as well as those raised in the *pro se* brief Petitioner submitted. <u>See</u> Letter from the Appellate Division, Fourth Department to L. Conner, dated 01/05/05 (confirming that Petitioner's *pro* se brief was accepted for filing by the Appellate Division on 12/07/04); <u>see</u> <u>also</u> <u>Conner</u>, 15 A.D.3d at 845 ("We have reviewed the contentions contained in defendant's pro se supplemental brief and conclude that they are without merit."). Overall, the record reflects that Petitioner received competent, meaningful representation from appellate counsel.

Thus, the Court cannot find that the state court unreasonably applied federal law in determining that appellate counsel's representation was not constitutionally infirm. The claim is

dismissed.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

s/Michael A. Telesca
Hon. MICHAEL A. TELESCA
United States District Judge

DATED:    March 30, 2010
          Rochester, New York